IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOANNA MARIE SMITH, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| vs. | )   Civil No.  12-219-DRH-CJP |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|         Defendant. | ) |

**REPORT and RECOMMENDATION**

      This Report and Recommendation is respectfully submitted to Chief Judge David R. Herndon pursuant to **28 U.S.C. § 636(b)(1)(B)**.

      In accordance with **42 U.S.C. § 405(g)**, plaintiff Joanna Marie Smith seeks judicial review of the final agency decision denying her Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to **42 U.S.C. § 423**.[1]

**Procedural History**

      Ms. Smith applied for benefits in October, 2009, alleging disability beginning on January 31, 2009. (Tr. 184, 191). She was a resident of Kansas at the time of her applications, but she resided in Monroe County, Illinois, at the time she filed suit. See, Doc. 3. The application was denied initially and on reconsideration. After a hearing, Administrative Law Judge (ALJ) William G. Horne denied the application on June 22, 2011. (Tr. 10-21). Plaintiff's request for

---

[1] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925, detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

review was denied by the Appeals Council, and the June 22, 2011, decision became the final agency decision. (Tr. 1).

Plaintiff has exhausted her administrative remedies and has filed a timely complaint in this court.

### Issues Raised by Plaintiff

Plaintiff raises the following issues:

(1) The ALJ erred in evaluating the medical evidence.

(2) The ALJ erred in his determination of plaintiff's credibility.

(3) The ALJ's assessment of plaintiff's residual functional capacity was erroneous because he failed to consider the effects of her nonsevere mental impairments.

(4) The ALJ erred in accepting the testimony of a vocational expert where that testimony conflicted with the *Dictionary of Occupational Titles*.

### Applicable Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement.

> The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

***Weatherbee v. Astrue***, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  **See, *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant has a severe impairment but does not meet or equal a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  ***Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).**  The Commissioner bears the burden of showing that there are a significant number of jobs in the economy that claimant is capable of performing.  **See, *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).**

It is important to keep in mind the proper standard of review for this Court.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall

be conclusive. . . ."  **42 U.S.C. § 405(g).**   Thus, the question for the Court is not whether Ms. Smith was, in fact, disabled during the relevant time period, but whether the ALJ's findings were supported by substantial evidence; and, of course, whether any errors of law were made.  **See, Books v. Chater**, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)).

This Court uses the Supreme Court's definition of "substantial evidence," that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richardson v. Perales, 402 U.S. 389, 401 (1971).**   In reviewing for substantial evidence, the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. **Brewer v. Chater**, 103 F.3d 1384, 1390 (7th Cir. 1997).   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   See, **Parker v. Astrue, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Horne followed the five-step analytical framework described above.   He concluded that plaintiff had not worked since the alleged onset date, and that she was insured for DIB through December 31, 2013.   He determined that plaintiff had severe impairments of multiple sclerosis and degenerative disc disease of the lumbar spine.[2]   He found that plaintiff's alleged mental impairment (depression) was not severe.   He found that her impairments did not meet or equal a listed impairment, which plaintiff does not dispute.

---

[2] Multiple sclerosis is a disease of the nervous system which "slows down or blocks messages between your brain and your body."   Symptoms include muscle weakness, visual disturbances, loss of balance and coordination, thinking and memory problems, and sensations such as numbness or prickling.   See, http://www.nlm.nih.gov/medlineplus/multiplesclerosis.html, accessed on January 2, 2013.

The ALJ concluded that plaintiff had the residual functional capacity (RFC) to perform a limited range of work at the sedentary exertional level.   Relying on the testimony of a vocational expert, the ALJ concluded that Ms. Smith was not able to perform her past work as a retail store manager, sales clerk, photocopy machine operator or eligibility worker.   However, he concluded that she was able to perform other jobs that exist in significant numbers in the economy, such as surveillance system operator, food and beverage order clerk and document preparer. (Tr. 10-21).

## The Evidentiary Record

This Court has reviewed and considered the entire record in formulating this Report and Recommendation.   The following is a summary of some of the pertinent portions of the written record, focused on the issues raised by plaintiff.

**1.      Agency Forms**

Ms. Smith was born in 1969, and was 39 years old when she allegedly became disabled in 2009.  (Tr. 226).   She completed high school and one year of college.   (Tr. 261).

In a Disability Report, plaintiff said that she was unable to work because of multiple sclerosis and degenerative disc disease, which caused her pain, balance problems, trouble using stairs, difficulty moving and memory problems.   (Tr. 254).

Plaintiff identified a number of jobs that she had worked at, including home health aide and manager of a retail store.   Her longest job was interviewing applicants for state unemployment benefits.   (Tr. 255).

In August, 2010, Ms. Smith reported that she lived with her boyfriend and daughter.   She said that she did a little housework but she had to rest after about half an hour.   She was able to use a computer, but, after about an hour, she had pain in her hands and legs.   She did not prepare meals because she was fatigued.   She alleged difficulty with activities such as lifting, squatting,

bending, standing, sitting and walking.  She also said that her vision had decreased over the last year and she had trouble concentrating.  (Tr. 281-288).

After her claim was initially denied, Ms. Smith submitted a report in which she said that her condition had worsened because she did not have insurance and could not afford to take all of her medications as prescribed.  She also said that her depression was getting worse.  (Tr. 299).

**2.      Evidentiary Hearing – June 9, 2011**

Plaintiff was represented by an attorney at the hearing.  (Tr. 29).

Ms. Smith was 41 years old at the time of the hearing.  She was 5' 6" and weighed about 265 pounds.  (Tr. 29-31).

Plaintiff testified that she worked for four years as an interviewer for the state of New Hampshire, interviewing applicants for unemployment benefits.  She left that job to move to Kansas.  She worked as gas station manager in Kansas until January 31, 2009.  (Tr. 39-40).  She left the gas station job because of symptoms related to MS, such as numbness in her arms and fatigue.  (Tr. 41).

At the time of the hearing, she was being treated by Dr. Lynch at the MS Clinic at the University of Kansas.  Dr. Lynch prescribed Copaxone, a drug which has to be injected daily.  Plaintiff testified that it "worked pretty good."  (Tr. 46).  She was also taking Ritalin for fatigue, which helped some, but not as much as she would like.  (Tr. 47).  She had constant achiness in her legs which was increased with activity.  She also had numbness in her arms, hands and legs.  (Tr. 49).  She took Tramadol to help her sleep and Darvocet for pain.  (Tr. 50).

Ms. Smith testified that she was better on some days, but she never had good days where she got up and was fine all day.  Her MS is "relapsing and remitting."  In the relapsing phase, she will have a week or two where she cannot do anything.  (Tr. 51-52).  On her better days, she will

make breakfast and lunch for her boyfriend, but has to lie down during the day due to fatigue.  (Tr. 53-54).

Plaintiff was taking Wellbutrin for depression, which helped.  She testified that her mental impairments would not keep her from working.  (Tr. 55).  Ms. Smith testified that she took medication for her back pain, and did not think her back pain would be a material factor in making her unable to work.  (Tr. 71).

Plaintiff testified that it was hard for her to afford "even the $4 medications at Walmart." (Tr. 55).

Fatigue was her main complaint.  She also had flare-ups of pain in her arms and legs.  (Tr. 60-61).  She also testified that she forgot things.  (Tr. 63).  Her mother helped her with her housework.  (Tr. 66).

A vocational expert also testified.  The ALJ asked the VE to assume a person who was limited to work at the sedentary exertional level, unable to do work requiring acute vision, further limited to simple, routine, repetitive work, with no crawling, kneeling, squatting or crouching and only occasional bending, no climbing, no repetitive overhead lifting or reaching, no exposure to extremes of temperatures, and requiring a sit/stand option.  The VE testified that this person could not do plaintiff's past work, but she could do other jobs such as surveillance system monitor, food and beverage order clerk, and document preparer. The VE testified that all of these jobs exist in significant numbers. (Tr. 81-84).

The ALJ then asked the VE to consider the limitations found by Dr. Lynch, plaintiff's treating doctor.  The VE pointed out that Dr. Lynch opined that plaintiff could sit for a total of six out of eight hours, and could stand/walk for a total of one hour.  She testified that, if this means that plaintiff could work only seven hours a day, she could not do any of the jobs previously

identified. (Tr. 86). Aside from that factor, the ALJ testified that, assuming the more restrictive RFC indicated by Dr. Lynch, plaintiff could still do the job of surveillance system monitor. (Tr.86-89).

According to the VE, her testimony did not conflict with the *Dictionary of Occupational Titles*. (Tr. 90).

**3.      Medical Records**

In 2007, Ms. Smith was treated by Dr. Appelbaum, a neurologist, for MS. (Tr. 328-335). In July, 2007, he released her to work with limitations of standing no more than one hour a day and no climbing, squatting or running. He indicated that she had short term memory loss which might interfere with her ability to work. (Tr. 328).

Plaintiff was hospitalized at the University of Kansas Hospital from November 11, 2008, through November 18, 2008, for exacerbation of her MS. She was under the care of Dr. Sharon Lynch. (Tr. 344-352). Dr. Lynch noted that she had been treated in the past by another doctor with Avonex, which was discontinued due to increased frequency of exacerbations. She was treated with a course of steroids and discharged on a Prednisone taper. At discharge, her gait had improved, her double vision was gone and her sixth nerve palsy had resolved. Home health care services were set up for rehabilitation physical therapy. (Tr. 344-347).

In January, 2009, Dr. Lynch noted that she was "markedly improved." She had returned to work on January 1, 2009, and was doing well. Dr. Lynch started her on Copaxone to treat her MS. Dr. Lynch used a form to record her findings on examination at office visits. On this visit, she noted that plaintiff had full motor strength in her upper and lower extremities, some abnormality of gait, and corrected vision of 20/30 and 20/25. (Tr. 357-358). In April, 2009, plaintiff reported to Dr. Lynch that she was doing well on Copaxone but she was fatigued. Dr.

Lynch prescribed Ritalin. (Tr. 355). In July, 2009, she reported that she was having memory and concentration problems. She could not tolerate Ritalin because it made her feel hyper and then "crash." Dr. Lynch's assessment was remitting and relapsing MS with cognitive complaints and fatigue. She recommended a neuropsychiatric evaluation. On the form that Dr. Lynch used to record her findings on examination, no abnormal findings were noted except that she was "very anxious." (Tr. 353-354).

Ms. Smith's primary care physician was Dr. Maribeth Orr. Ms. Smith saw Dr. Orr for pain in her low back and right leg in September, 2009. (Tr. 365). X-rays showed moderately severe disc narrowing at L4-5 and L5-S1 with no fracture or bone destruction. (Tr. 379). In October, 2009, as she was still having pain, Dr. Orr prescribed a Medrol dose pack and Lortab. She weighed 231 pounds. Dr. Orr recommended that she lose weight, exercise and "stay as active as possible." (Tr. 365). Ms. Smith attended physical therapy in October, 2009. (Tr. 387-393).

Plaintiff saw Dr. Lynch in November, 2009, and reported that she was very confused, her memory was worse, and she was having a lot of pain. Dr. Lynch again recommended a neuropsychiatric evaluation. Much of the form for recording examination findings was left blank, except that her gait was antaxic and she had full motor strength in all extremities. (Tr. 395-396).

Shawn Morrow, D.O., performed a consultative physical examination on January 16, 2010. (Tr. 404-408). Plaintiff reported a one-month history of low back pain radiating into her hip and a four-year history of MS. Her primary symptom was fatigue. She also complained of memory problems. On examination, her weight was 239 pounds. Her corrected vision was 20/30 and 20/40. Grip strength was 60 pounds in both hands. Range of motion was normal. There was no effusion or active inflammation of the joints. She had no muscle spasms. Neurologically, her reflexes and motor function were normal. She had no loss of sensation and no cerebellar signs.

She had mild difficulty with heel and toe walking, hopping, squatting and arising from a sitting position. Her gait and station were stable. Dr. Morrow concluded that she had no clinical evidence of neurological impairment.

Ms. Smith saw Dr. Orr on January 25, 2010, for worsening symptoms of depression. She complained of excessive sleeping, loss of energy and lack of motivation, and indicated that this was a seasonal occurrence for her. Dr. Orr prescribed Wellbutrin. (Tr. 443).

Edward Neufeld, Ph.D., performed a consultative psychological evaluation on January 28, 2010. (Tr. 411-413). She was taking Wellbutrin and reported that her mood was improved. On mental status examination, she showed superior ability in immediate recall, but mild deterioration in short-term memory. She was oriented and had an adequate fund of general knowledge. She had adequate concentration. She had no hallucinations, delusions or significant confusion. Dr. Neufeld concluded that she had no significant work-related limitations arising from emotional-mental factors.

On April 6, 2010, Dr. Lynch completed a form entitled Medical Source Statement in which she assessed plaintiff's physical limitations. (Tr. 468-470). The copy is faint and difficult to read. Dr. Lynch opined that plaintiff could lift only ten pounds. She could sit for a total of six hours and stand or walk for a total of one hour. She had to alternate between sitting and standing, and was required to occasionally elevate her legs. She could only occasionally use her hands for grasping, reaching and handling, and only seldom for fingering or feeling. She could seldom bend or climb, and could never stoop or kneel. The last section of the form asked the doctor to list the objective clinical findings which caused the above limitations. Dr. Lynch left this section blank.

X-rays taken on June 28, 2010, showed degenerative disc disease at L4-5 and L5-S1 with

no acute findings.   (Tr. 446).

Plaintiff saw Dr. Lynch on October 1, 2010.   She complained of severe fatigue, so severe that she could not do daily living activities for more than five or ten minutes without becoming dizzy and shaky and having to rest.   She also had occasional numbness and tingling of her arms and legs in no particular distribution.   She denied any new weakness, double or blurred vision, loss of vision, seizures, falls, gait difficulties or headaches.   Dr. Lynch noted that, according to a neuropsychiatric evaluation by Dr. Frutiger, she had significant anxiety/depression which was contributing to her subjective memory complaints.   (Dr. Frutiger's report is not in the record.)   On the last visit, Dr. Lynch had prescribed Provigil for her fatigue, but her insurance would not cover it.   Dr. Lynch had also prescribed Neurontin, but plaintiff had never started it and said she was unsure whether she had gotten a prescription for it.   Medication noncompliance was identified as a major issue.   On examination, her cranial nerves were intact.   She had normal strength in her upper extremities but had burning weakness on active range of motion and resistance.   Sensation was intact to light touch and pinprick but she had decreased vibration at the great toes.   Her gait was cautious.   She was able to heel and toe walk, but was unable to tandem walk due to unsteadiness.   She had normal finger to nose except for mild past pointing on the right.   Dr. Lynch's impression was that her MS was stable without relapses on Copaxone, and that her severe fatigue was most likely related more to depression than to MS.   Dr. Lynch prescribed Lexapro, Ritalin for fatigue and Gabapentin (Neurontin) for aching leg pain.   She instructed plaintiff to follow up with her primary care physician regarding her depression.

The last visit with Dr. Lynch was on March 23, 2011.   (Tr. 459).   Dr. Lynch noted that plaintiff did not always have enough money to get her medications.   On examination, her attention span, concentration and recent and remote memory were intact.   Her cranial nerves were

normal except for mild left facial weakness. Motor strength was 5/5 throughout except for 4+/5 in the left hip and knee flexors. Her gait was normal. She was working with some indigent programs offered by drug companies to get her medications. Dr. Lynch concluded that her MS was relatively stable on Copaxone.

**4.     State agency consultant assessments**

Sallye M. Wilkinson, Ph. D., completed a Psychiatric Review Technique form on February 11, 2010.[3] (Tr. 414-427). This assessment was based on a review of medical records and not a personal examination. Dr. Wilkinson opined that Ms. Smith did not have a severe mental impairment. She noted that Ms. Smith had a cognitive disorder with mild memory deficits and a mood disorder due to her medical condition (MS), but concluded that her memory deficits would not significantly interfere with her capacity to work. Her limitations in maintaining concentration, persistence or pace were rated as mild.

Gerald Siemsen, M.D., completed a Physical RFC assessment on July 14, 2010. (Tr. 448-455). Dr. Siemsen opined that plaintiff was capable of lifting ten pounds frequently and twenty pounds occasionally. These are the lifting requirements of light work. 20 C.F.R. §404.1567(b). He limited her to standing/walking for a total of two hours a day and sitting for a total of six hours a day. She had no limitations in ability to push/pull, including operation of foot controls. She was limited to only occasional postural activities such as balancing and stooping, and should never climb ladders, ropes or scaffolds. She had no manipulative limitations and no visual limitations. She should avoid concentrated exposure to extreme heat and cold.

## Analysis

---

[3] The Psychiatric Review Technique form is part of the "special technique" used by the agency in evaluating alleged mental impairments. The special technique is explained in 20 C.F.R. §404.1520a.

In her first point, Ms. Smith challenges the ALJ's weighing of the medical evidence. She first argues that Dr. Lynch's opinion, set forth in her April 6, 2010, report, should have been given controlling weight according to the "treating physician's rule." Failing that, she argues, the ALJ was required to evaluate Dr. Lynch's opinion applying the factors set forth in 20 C.F.R. §404.1527(d).[4]

The opinion of a treating doctor is, of course, not automatically entitled to controlling weight. Rather, it is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. ***Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000); *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001).**

Social security regulations refer to a treating doctor as a "treating source." With regard to the assessment of treating source opinions, 20 C.F.R. §404.1527(d)(2) states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> [Emphasis added]

An ALJ must give "good reasons" for discounting a treating doctor's medical opinion; if the opinion does not merit controlling weight, the ALJ must consider the "checklist of factors" set forth in §404.1527(d). ***Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010)**, citing ***Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).** The ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has

---

[4] 20 C.F.R. §§ 404.1527 was recently amended. Paragraph (c) was deleted, and paragraphs (d) through (f) were redesignated as paragraphs (c) through (e). 77 Fed. Reg. at 10656–57 (2012). The parties and the Court cite to the version of the regulation that was in effect at the time of the ALJ's decision.

-13-

characterized as "lax."  *Berger v. Astrue*, **516 F.3d 539, 545 (7th Cir. 2008)**; *Elder v. Astrue*, **529 F.3d 408, 415 (7th Cir. 2008)**.  Even so, the ALJ must discuss the evidence in enough detail so as to permit meaningful review.  If a decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," a remand is required. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir.2002)."  *Kastner v. Astrue*, **697 F.3d 642, 646 (7th Cir. 2012).**

     Here, ALJ Horne's decision failed to meet even the lax standard of minimal articulation. He said only that he gave "very little weight" to Dr. Lynch's opinion because "her opinion is inconsistent with the weight of the evidence."  (Tr. 17).  He cited to no examples of any such inconsistency and did not offer any further explanation.  He did not discuss the checklist of factors set forth in in §404.1527(d).

     The Commissioner does not argue that the ALJ sufficiently articulated sound reasons for rejecting Dr. Lynch's opinion.  Rather, he takes the opposite tack of arguing that, even though the ALJ said that he gave very little weight to Dr. Lynch's opinion, the ALJ's RFC assessment actually accommodated substantially all of the limitations found by Dr. Lynch.  See, Doc. 18, pp. 11-13.

     The Commissioner's argument misses the mark in several respects. First, this Court's review is limited to the rationale set forth by the ALJ; the ALJ's decision cannot be upheld based upon the Commissioner's embrace of a rationale not relied upon by the ALJ.  *Kastner v. Astrue,* **697 F.3d 642, 648 (7th Cir. 2012), citing** *SEC v. Chenery Corporation*, **318 U.S. 80, 87–88 (1943).**  The ALJ explicitly stated that he gave "very little weight" to Dr. Lynch's opinion.  To uphold the decision on the basis that the ALJ actually accepted Dr. Lynch's opinion would require the Court to ignore the reasons explicitly given by the ALJ for his decision, which is forbidden by the *Chenery* doctrine.

Further, the Commissioner's argument glosses over one crucial difference between Dr. Lynch's opinion and the ALJ's RFC assessment.  Dr. Lynch opined that Ms. Smith could not work an eight-hour day.  The VE testified that, if plaintiff could only work seven hours a day, she could not do any of the jobs that were identified at the hearing.  (Tr. 86, 91).

The Commissioner argues that any error is harmless because the VE testified that plaintiff could do the job of surveillance system monitor even under Dr. Lynch's RFC assessment.  This argument is premised on an incorrect reading of the testimony.  Contrary to the Commissioner's suggestion, the VE did not testify that plaintiff could perform the job of surveillance system monitor if she assumed *all* of the limitations offered by Dr. Lynch.  Rather, the ALJ asked the VE to ignore the limitation to only seven hours of work, and asked whether there were "anything else" in Dr. Lynch's RFC that "would make her unemployable."  (Tr. 86).  After some discussion, the VE testified that she could still do the surveillance system monitor job.  The VE clearly testified that, if plaintiff were limited to a seven hour work day, she could not do any of the jobs identified, including the surveillance system monitor job.  (Tr. 86, 91).  No jobs were identified that could be performed by plaintiff if Dr. Lynch's opinion were accepted in its entirety.  Therefore, the Commissioner's harmless error argument fails.

In addition, the ALJ's credibility assessment was erroneous.  Plaintiff correctly points out that ALJ Horne used the boilerplate language that has been repeatedly criticized by the Seventh Circuit.  The Seventh Circuit recently reiterated that the ALJ must determine a claimant's credibility by considering the factors set forth in 20 C.F.R. §404.1529(c) and must support his credibility findings with evidence in the record.  "Credibility findings must have support in the record, and hackneyed language seen universally in ALJ decisions adds nothing."  **Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012).**  It is not the use of the boilerplate language in and of

itself which is fatal; it is the use of the boilerplate language unaccompanied by findings which are supported by evidence in the record.

The reasons given by the ALJ for doubting the truth of Ms. Smith's statements are not sufficient. He relied heavily on her activities of daily living and her failure to take medications as prescribed. See, Tr. 18-19. The ALJ overstated the evidence regarding plaintiff's activities of daily living, ignoring the evidence that she was able to do household chores such as cleaning, preparing meals and laundry only sporadically and was required to rest after exertion. Further, the ability to struggle through the day does not establish the ability to work full time. "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." **Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).** The reliance on what he called "noncompliance" was erroneous in that the ALJ ignored evidence that Ms. Smith failed to fill prescriptions and take medication as directed because she could not afford to do so. **Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012), citing SSR 96-7p**.

Without making any suggestion as to whether plaintiff is, in fact, disabled, or as to what the ALJ's decision should be on reconsideration, this Court concludes that this case must be remanded to the Commissioner for further proceedings. There are only two avenues for remanding a social security case. Remand can be ordered pursuant to sentence four or to sentence six of 42 U.S.C. § 405(g). A sentence four remand depends upon a finding of error, and is itself a final, appealable order. In contrast, a sentence six remand is for the purpose of receipt of new evidence, but does

not determine whether the Commissioner's decision as rendered was correct.   A sentence six remand is not an appealable order.   See, *Melkonyan v. Sullivan*, **501 U.S. 89 (1991);** *Perlman v. Swiss Bank Corporation Comprehensive Disability Protection Plan*, **195 F.3d 975, 978 (7th Cir. 1999).**

Here, a sentence four remand is appropriate.

### Recommendation

This Court recommends that the Commissioner's final decision be **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

Upon remand, judgment should be entered in favor of plaintiff.   *Schaefer v. Shalala*, **509 U.S. 292, 302-303 (1993).**

Objections to this Report and Recommendation must be filed on or before **January 25, 2013.**

**Submitted:   January 7, 2013.**

s/ Clifford J. Proud
CLIFFORD J. PROUD
UNITD STATES MAGISTRATE JUDGE